**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| William J. Pribe, | : | Case No. 3:10 CV 01726 |
| Plaintiff, | : | |
| vs. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Cessna Aircraft Company, | : | |
| Defendant. | : | |

Filed pursuant to the Age Discrimination Employment Act of 1967 (ADEA), this case was referred to the undersigned Magistrate for report and recommendation. Pending are Defendant's Motion to Dismiss, Plaintiff's Opposition, Defendant's Reply, Plaintiff's Sur-Reply and Defendant's Response to Sur-Reply (Docket Nos. 8, 11, 12, 18 & 19). For the reasons that follow, the Magistrate recommends that the Court grant Defendant's Motion to Dismiss and deny Plaintiff's request to strike Defendant's Exhibit A.

**I. THE PARTIES**

Plaintiff is a resident of Sylvania, Lucas County, Ohio. Plaintiff was employed at the service facility for Cessna Aircraft in Toledo, Ohio (Docket No. 1).

Defendant, a wholly owned subsidiary of Textron Incorporated, is a designer and manufacturer of light and midsize aircraft. Www.cessna.com. Cessna has its principal place of business in Wichita,

Kansas (Docket No. 1). On January 29, 2009, the service facility for Cessna Toledo, Ohio, was closed. Abclocal.go.com.

## II. FACTUAL & PROCEDURAL BACKGROUNDS

Plaintiff was Defendant's employee for 28 years (Docket No. 1, ¶ 5). On December 1, 2008, he and two other managers were targeted for discharge under a plan to reduce the work force. Plaintiff's last day of employment was slated for January 30, 2009 (Docket No. 1, ¶ 4). On January 29, 2009, Defendant announced that it would cease operation in Toledo, Ohio. Upon learning that the facility would close, Plaintiff was compelled to sign the release and severance agreement presented to him in December 2008. He did sign the release and severance agreement on February 2, 2009 (Docket No. 8, Exhibit 1, pp. 1-6 of 6). During the six weeks that followed his signing, Plaintiff discovered that 25 individuals were offered transfers to other jobs with Cessna.

Plaintiff received written confirmation dated May 6, 2010, that the United States Equal Employment Opportunity Commission would not proceed further in processing his charge under the ADEA (Docket No. 1, p. 3 of 3). Defendant filed a Motion to Dismiss for the reason that Plaintiff knowingly and voluntarily waived his right to claims under ADEA when he executed the release and severance agreement.

## III. PLAINTIFF'S REQUEST TO STRIKE
(Docket No. 11).

In his Opposition, Plaintiff seeks an order striking Exhibit A, the agreement that Plaintiff signed that resolves all issues related to his discharge.

Under FED. R. CIV. P. 12(f), the court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. *Horner v. Klein,* 2010 WL 6239893, * 4 (N. D. Ohio 2010). Motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy

or would prejudice the movant. *Id.* (*citing Frisby v. Keith D. Weiner & Associates Company*, *LPA*, 2009 WL 3818844, *1 (N. D. Ohio 2009) (*citing Brown & Williamson Tobacco Corporation v. United States,* 201 F.2d 819, 822 (6th Cir. 1953); *see also United States v. American Electrical Power Services Corporation,* 281 F.Supp. 931, 935 (S. D. Ohio 2002); 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1382 (3rd ed. 2004) ("[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice . . . "). Exhibits attached to motions are not pleadings and are outside the scope of Rule 12(f). *Id.* (*citing Rhea v. Dollar Tree Stores*, 395 F.Supp.2d 696, 702 (W. D. Tenn.2005).

Although outside the scope of the Rule 12(f), the release and separation agreement attached to the Motion to Dismiss is not a pleading and therefore not within the scope of Rule 12(f). Alternately, the Magistrate finds that the release and severance agreement are neither redundant, immaterial, impertinent, nor scandalous. In fact, the challenged attachment is critical to the resolution of Plaintiff's cause of action. The Magistrate recommends that the Court deny Plaintiff's request that the release and severance agreement attached to the Motion to Dismiss be stricken.

### IV.  DEFENDANT'S MOTION TO DISMISS.
### (DOCKET NO. 8)

Defendant argues that the release and severance agreement complies with the requirements of Older Workers' Benefits Protection Act (OWBPA); consequently, the release of ADEA claims was valid. Defendant contends further that the complaint is devoid of facts that would support a claim of discrimination based on age.

Plaintiff argues that even if the Court failed to strike the release and severance agreement, the waiver was inconsistent with the requirements of the OWBPA. Consequently, Plaintiff contends that he

could not have executed a valid waiver and is, therefore, not foreclosed from pursuing his ADEA claims. Alternately, the agreement is invalid due to fraudulent misrepresentation. Assuming that the agreement is valid, his ADEA claim that arose after the execution of the agreement is not foreclosed from review.

**A. Motion to Dismiss Standard of Review**.

A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations. *Golden v. City of Columbus,* 404 F.3d 950, 958 -959 (6th Cir. 2005) *cert. denied*, 126 S. Ct. 738 (2005) (*citing Gao v. Jenifer*, 185 F. 3d 548, 552 (6th Cir. 1999)). The Court must accept as true "well-pleaded facts" set forth in the complaint. *PR Diamonds, Incorporated, v. Chandler* 364 F.3d 671, 680 (6th Cir. 2004) (*citing Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)). While this standard is considered liberal, it does require more than the bare assertion of legal conclusions. *Id.* (*citing Columbia Natural Resources*, *Incorporated v. Tatum*, 58 F.3d 1101, 1109 -1110 (6th Cir. 1995) (*citing Allard v. Weitzman (In Re DeLorean Motor Company),* 991 F.2d 1236, 1240 (6th Cir. 1993)). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.' " *Id.* (*citing Allard,* 991 F.2d at 1240 (*quoting Scheid v. Fanny Farmer Candy Shops, Incorporated,* 859 F.2d 434, 436 (6th Cir. 1988)); *see also Ana Leon T. v. Federal Reserve Bank,* 823 F.2d 928, 930 (6th Cir. 1987) ( *per curiam* ) (holding that the statement of mere legal conclusions is not entitled to liberal RULE 12(b)(6) review), *cert. denied,* 108 S. Ct. 333 (1987)).

If matters outside the pleadings are presented to and not excluded by the court, the motion to dismiss shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *Greenberg v. Life Insurance Company of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999). Under

certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. *Id.* (*see* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.30[4] (3rd ed. 1998)). This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim . . . " *Id.* In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.; see, e.g., Weiner v. Klais & Company,* 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that defendant attached to the motion to dismiss were part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

**B.    ANALYSIS.**

Initially, the Magistrate finds that the release and severance agreement attached to the Motion to Dismiss are not matters outside of the pleading. Plaintiff refers to the severance agreement at least four times in his Complaint. The release and severance agreement are inextricably linked to whether Plaintiff has stated a claim under ADEA and whether that claim is barred by execution of the release and separation agreement. The Magistrate refers to the release and settlement agreement in resolving the issues asserted in the Motion to Dismiss.

**1.    THE VALIDITY OF THE RELEASE AND SEPARATION AGREEMENT.**

The central question in this case is whether Plaintiff can sue his former employer under ADEA, as amended in the OWBPA, 29 U. S. C. § 626(f), since he signed a release that waives any claims under ADEA.

a.    **THE LAW**

In October 1990, the OWPA, Pub. L. No. 101-433, 104 Stat. 978, codified at 29 U. S. C. § 626(f),

became effective as an amendment to the ADEA.  OWBPA sets forth the minimum standard for waiver of claims arising under the ADEA.  The language of OWBPA is mandatory and a valid waiver of ADEA claims cannot be created unless the waiver and release satisfies the OWBPA's requirements.  *Oubre v. Entergy Operations,* 118 S. Ct. 838, 841 (1998).  The party asserting the validity of a waiver has the burden of proving that a waiver was knowing and voluntary.  29 U. S. C. § 626(f)(3) (Thomson Reuters 2011).

Under OWBPA there are eight minimum requirements an ADEA release must meet before it can be considered knowing and voluntary.  29 U. S. C. § 626 (f) (Thomson Reuters 2011).  They are:

(A)     the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B)     the waiver specifically refers to rights or claims arising under this chapter;

(C)     the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D)     the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E)     the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)     (i) the individual is given a period of at least 21 days within which to consider the agreement; or

(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least

6

45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least seven days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to--

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626 (f) (Thomson Reuters 2011).

    b.    **THE APPLICATION OF LAW TO THE FACTS**

The evidence produced in this case makes it clear that the waiver complies with the statutory language of Section 626(f). The terms of the agreement are delineated with precision. The average individual eligible to participate would understand the straightforward language of this waiver. The first requirement of the minimum requirement test is therefore met.

Paraphrasing paragraph seven of the release, Plaintiff specifically released, waived and discharged Defendant from any claims, damages, lawsuits, injuries, liabilities and causes of action arising under the ADEA as amended. The release and severance agreement specifically refers to rights or claims arising

under OWBPA, thus meeting the second requirement of the test.

In paragraph seven, Plaintiff is advised that he does not waive rights or claims that may arise after the date the waiver is executed. Specifically, "*You further acknowledge that you have been hereby advised that the waiver and release do not apply to any rights or claims that may arise after the execution date of this agreement*." The third mandate of the minimum requirement test is met.

Plaintiff waived his claims in exchange for consideration consisting of 26 weeks of pay in one lump sum and a subsidy for continued health care benefits under the Consolidated Omnibus Budge Reconciliation Act. This provision complies with the fourth mandate in the minimum requirement paradigm.

Paragraph ten of the release and severance agreement advises the signer that he or she has the right to consult with counsel about the advisability of signing the agreement. The fifth requirement of the test is met.

The minium requirement test requires that the perspective signer be given at least forty-five days if employment termination is offered to a class or group of employees. In paragraph eleven, Plaintiff was the beneficiary of forty-five days within which to contemplate whether he should sign the agreement. The sixth mandate of the minimum requirement test is met.

The waiver must include a period of at least seven days following the execution of the agreement within which to revoke the agreement. In this case, Plaintiff had seven days after he signed the agreement to send a notice of revocation. Defendant has complied with the seventh requirement of the test.

The waiver in this case was apparently offered to a group or class of employees; consequently, Defendant provided Plaintiff with a writing, designed to be easily understood, as to class of eligibility

for the layoff and the employees not selected for layoffs in Toledo, Ohio (Docket No.8, Exhibit 1, pp. 5-6 of 6). Plaintiff contends that the notice was not globally proficient. There were seven other people selected for layoffs at the local level. Nationally there were 500 individuals subject to layoffs. Plaintiff contends that Defendant was required to disclose the ages and titles of all 500 employees selected for the layoff. Defendant was required to disclose the ages and titles of all 500 employees selected for the layoff. Defendant did comply with the seventh requirement of the test.

For purposes of applying 29 U. S. C § 616(f)(1)(H)(ii), the Toledo Service Center was the decisional unit in this case. The decisional unit was responsible for using a process by which Defendant chose certain employees for an exit incentive program. Plaintiff has failed to demonstrate that the decisional unit extended its consideration to employees at other facilities before selecting the group of Toledo employees to whom they would offer the employment termination program. The decision to provide comparative information to Plaintiff that informed him of those who were terminated from a single facility complies with the purpose and intent of OWBPA.

  **C.**   **THE CONCLUSION**.

Defendant, as the party asserting the validity of the waiver, has successfully demonstrated that the eight statutory requirements are met. Plaintiff executed a valid waiver of ADEA rights. That release bars this Court from addressing the merits of Plaintiff's ADEA claim.

**2.**   **WAS THE AGREEMENT INVALID DUE TO FRAUDULENT MISREPRESENTATION?**

In his Opposition, Plaintiff suggests that Defendant's false representation that all of the Toledo facility employees would be laid off was fraudulently made to induce Plaintiff to sign the agreement.

In order to establish this claim, a plaintiff must show:

1. A false representation, actual or implied, or a concealment of a fact material to the transaction.

2. The representation must relate to the present or past.

3. Knowledge of the falsity of statements made with such utter disregard or recklessness as to truth or falsity that knowledge can be inferred.

4. Intent to mislead another into relying on the representation.

5. Reliance-with a right to reply.

6. Injury as a result of such reliance.

*Kasuri v. St. Elizabeth Hospital Medical Center*, 897 F.2d 845, 851 (6th Cir. 1990) (*citing Behrend v. State of Ohio*, 55 Ohio App.2d 135, 141-42, 379 N.E.2d 617 (1977)).

Plaintiff has asserted several conclusory allegations which do not infer the existence of a valid claim for fraudulent misrepresentation. Plaintiff admitted that Defendant's counsel delayed the time within which to make a decision to sign the release, giving him every opportunity to explore retirement benefits and view the effect of the second round of layoffs at the Toledo facility. While Plaintiff contemplated his choices, the announcement of closure was made, Plaintiff relied upon counsel's representation that it was prudent to sign the agreement and forgo litigation because his damages for age discrimination would be limited to the period between the layoff date and the closing date of the entire Toledo facility. There is no evidence that these representations were anything more than sound tactical advice. There is no evidence that these representations were false or that they concealed facts material to Plaintiff's determination if he would sign the release and severance agreement.

To overcome a motion to dismiss, Plaintiff must show that all six elements coexist. Plaintiff has failed to show, at a minimum, that Defendant made a false representation, actual or implied, or that Defendant concealed a fact material to the transaction. Plaintiff has not established a prima facie case

for fraudulent misrepresentation.

3.   **IS PLAINTIFF'S ADEA CLAIM BARRED IN ITS ENTIRETY?**

The parties do not dispute that Plaintiff's termination arose from a reduction in work force. After Plaintiff executed a release and severance agreement on February 2, 2009, he discovered that 25 people were offered transfers to other Cessna facilities. Plaintiff suggests that unlawful age discrimination motivated Defendant to deprive him of the opportunity to transfer.

The Sixth Circuit has clearly established that an employer has no duty under ADEA to permit an employee to transfer to another position or to displace workers with less seniority when the employee's position is eliminated as part of a work force reduction. *Barnes v. GenCorp Incorporated*, 896 F.2d 1457, 1469-1470 (6th Cir. 1990) (*see, e.g., Ridenour v. Lawson Company*, 791 F.2d 52, 57 (6th Cir. 1986) ("[w]here an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company"); *Simpson v. Midland-Ross Corporation*, 823 F.2d 937, 942 n. 6 (6th Cir. 1987)).

Here, even if the Magistrate construed the indicia of age discrimination in Plaintiff's favor, there are no facts, just speculation, that Plaintiff was not offered a transfer because of his age. Because Defendant discharged Plaintiff for what appears likely to be economic reasons, there was no duty to transfer him to another position in the company despite his claims of discrimination and other disparate acts.

The Magistrate finds that Plaintiff could not prevail on a challenge in which age was a factor in determining whether he was offered a transfer. Therefore, the undersigned recommends that the Court dismiss Plaintiff's claim for age discrimination arising after the execution of the release and severance agreement.

11

### V. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny Plaintiff's request to strike Defendant's Exhibit A (Docket No. 11), grant the Motion to Dismiss (Docket No. 8) and terminate the referral to the undersigned Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:  April 28, 2011

### VI. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in United States v. Walters, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the

Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.